**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| AMBER LANCASTER, JAMILLETTE GAXIOLA, JESSICA HINTON a/k/a JESSA HINTON, KIMBERLY COZZENS, TIFFANY GRAY a/k/a TIFFANY TOTH, MARKETA LIM a/k/a MARKETA KAZDOVA, MERCEDES TERRELL, RHIAN SUGDEN, LENNA BARTLETT and CIELO JEAN "CJ" GIBSON,     Plaintiffs, <br><br> v. <br><br> CLUB BELT LLC d/b/a SWIG NIGHTCLUB, <br><br>        Defendant. | : <br> : <br> : <br> : <br> :    C.A. No. <br> : <br> : <br> : <br> :    **COMPLAINT** <br> : <br> :    **(Jury Trial Demanded)** <br> : <br> : <br> : <br> : <br> : |

Plaintiffs AMBER LANCASTER, JAMILLETTE GAXIOLA, JESSICA HINTON A/K/A JESSA HINTON, KIMBERLY COZZENS, TIFFANY GRAY A/K/A TIFFANY TOTH, MARKETA LIM A/K/A MARKETA KAZDOVA, MERCEDES TERRELL, RHIAN SUGDEN LENNA BARTLETT and CIELO JEAN "CJ" GIBSON, (collectively, "Plaintiffs"), file this Complaint against CLUB BELT LLC, d/b/a SWIG NIGHTCLUB ("Defendant") respectfully allege as follows:

## BACKGROUND

1.      This is an action for damages and injunctive relief relating to Defendant's misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their night club, Swig Nightclub located at 1111 Easton Rd, Warrington, Pennsylvania 18976 (**hereinafter referred to as the "Night Club" or "Swig"**).

2.      As detailed below, Defendant's misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising; c) Right of Privacy; d) Common Law

1

Right of Publicity; e) Defamation; f) Negligence and Respondeat Superior; g) Conversion; h) Unjust Enrichment; and i) Quantum Meruit.

3.      In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5.      This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6.      Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7.      According to publicly available records, Defendant Club Belt LLC, is a limited liability company formed under the laws of the state of Pennsylvania, with its principal place of business located at 2253 Second Street Pike, Newton, Pennsylvania, 18940. Upon information and belief, Club Belt LLC operates Swig Nightclub, which is located at 1111 Easton Rd, Warrington, Pennsylvania 18976.

8.      Venue is proper in the United States District Court for the Eastern District of Pennsylvania because Defendant's principal place of business is located in Newton, Pennsylvania, (Bucks County).

9.      A significant portion of the alleged causes of action arose and accrued in Newton, Pennsylvania and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Newton, Pennsylvania.

## PARTIES

### Plaintiffs

10.      Plaintiff Amber Lancaster ("Lancaster") is a well-known professional model, and a resident of Los Angeles County, California.

11.     Plaintiff Jamillette Gaxiola ("Gaxiola") is a well-known professional model, and a resident of Clark County, Nevada.

12.     Plaintiff Jessica Hinton a/k/a Jessa Hinton ("Hinton") is a well-known professional model, and a resident of Los Angeles County, California.

13.     Plaintiff Kimberly Cozzens ("Cozzens") is a well-known professional model, and a resident of Santa Clara County, California.

14.     Plaintiff Tiffany Gray a/k/a Tiffany Toth ("Gray") is a well-known professional model, and a resident of Orange County, California.

15.     Plaintiff Marketa Kazdova ("Kazdova") is a well-known professional model, and a resident of Los Angeles County, California.

16.     Plaintiff Mercedes Terrell ("Terrell") is a well-known professional model, and a resident of Orange County, California.

17.     Plaintiff Rhian Sugden ("Sugden") is a well-known professional model, and a resident of England.

18.     Plaintiff Lenna Bartlett ("Bartlett") is a well-known professional model, and a resident of Orange County, California.

19.     Plaintiff Cielo Jean "CJ" Gibson ("Gibson") is a well-known professional model, and a resident of Los Angeles County, California.

***Defendants***

20.     Defendant, Club Belt LLC, is a limited liability company formed under the laws of the state of Pennsylvania and registered to conduct business in Pennsylvania. During times relevant to this action, Club Belt LLC operated Swig.

21.     Service of process may be perfected upon Defendant Club Belt LLC by serving the registered agent for service of process, Emanuel Betesfandiar, who can be located at 2253 Second Street Pike, Newtown, PA 18940.

# FACTUAL ALLEGATIONS

22.    Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

23.    Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

24.    Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendant to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendant.

25.    In the case of each Plaintiff, this apparent claim was false.

26.    Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

27.    No Plaintiff has ever received any remuneration for Defendant's improper and illegal use of their Images, and Defendant's improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

28.    Further, in certain cases Defendant misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiffs' Individual Backgrounds and Careers***

29.    Lancaster joined The Price is Right in 2008. She was crowned Miss Washington Teen USA, and went to join the Sea Gals, the Seattle Seahawks famed cheerleading squad. Following five years on the squad, she moved to Los Angeles to pursue her entertainment career. In addition to her role on The Price is Right, Amber co-starred as Jenny Swanson on MTV's The

4

Hard Times of RJ Berger. She has appeared on episodes of Days of Our Lives, CSI: Miami, The Bold and the Beautiful, Community, and Entourage. In addition, she has appeared as herself on Attack of the Show, The Scream Awards, and The Best Damn Sports Show Period. She also has appeared in the feature film Redline. Amber has been featured in numerous magazine spreads and fashion features in Maxim, US Weekly, People, Stylewatch, Life & Style and Star. She has also been featured as part of Maxim's annual "Hot 100" list. She has 489K Instagram followers.[1]

30.    Upon information and belief, Lancaster is depicted in the photo in Exhibit "A" to promote Swig on its Instagram page. This Image was intentionally altered to make it appear that Lancaster was either an employee working at Swig, that she endorsed Swig, or that she was otherwise associated or affiliated with Swig.

31.    Lancaster has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

32.    Gaxiola began her career as a teenager. She was spotted by a modeling agent at a fast-food restaurant, and after some initial resistance, the teenage beauty decided to try modeling. She became Miss Cuba at the age of 18, and quickly became popular among fashion designers and magazines. She is active in a number of social and charitable causes, and one of her personal missions has been to help young women deal with self-esteem issues. In a small period of time, she has possessed the work ethic and dedication to transition between Beauty, Fashion, TV, and is now a Sports Personality representing the UFC. She has worked for designer brands such as Reebok, Hurley, Guess Jeans, Victoria Secret, Nike, MAC Cosmetics, Roberto Cavalli, Naeem Khan, Paul Marciano, Fendi, Saks Fifth Avenue and Niemen Marcus. She is also the current face of UFC. Her beauty pageants consist of Miss Cuba Grand International, and Miss Cuba International. Jamillette's magazine highlights include those of GQ Magazine, Maxim Australia,

---

[1] In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

Open Magazine, and Esquire. She has 210,000 Instagram followers.

33.    Upon information and belief, Gaxiola is depicted in the photo in Exhibit "B" to promote Swig on its Instagram page. This Image was intentionally altered to make it appear that Gaxiola was either an employee working at Swig, that she endorsed Swig, or that she was otherwise associated or affiliated with Swig.

34.    Gaxiola has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

35.    Hinton was discovered by a talent manager at a wedding at age 14. By age 16 she locked in three national TV commercials and made guest appearances on Baywatch and 7th Heaven. Hinton expanded her portfolio to include runway modeling and print campaigns at 18. In 2010, Hinton was the face of the Palms Hotel & Casino's ad campaign. She then pursued TV personality roles hosting for Victory Poker, and Top Rank Boxing interviewing the likes of Manny Pacquiao and Shane Mosley. In 2011, she was selected as July's Playmate of the Month becoming one of the most popular Playmates of that year. She was the center piece of an ad campaign for Milwaukee's Best Beer in conjunction with Playboy Enterprises. Hinton also attained spokesmodel roles for Affliction Clothing, Enzo, Milano Hair Products, REVIV Wellness Spa, and Protein World. She has ongoing modeling contracts with Rhonda Shear Shapewear, Leg Avenue, and Roma Costume, in addition to hosting a Los Angeles, CA television station KTLA. Her images have appeared on billboards, magazines, posters, and multiple forms of electronic media. Hinton has been a featured front cover model gaining attraction for magazines such as FHM, Kandy, MMA Sports, Guitar World, and Muscle & Fitness. She was named Creative Director for MAJR Media and was given part ownership for her role with the company. Hinton has successfully accomplished elite status as a social media celebrity with a combined total of over 3.8 million followers on Facebook, Instagram and X (formerly known as Twitter).

36.     Upon information and belief, Hinton is depicted in the photo in Exhibit "C" to promote Swig on its Instagram page. This Image was intentionally altered to make it appear that Hinton was either an employee working at Swig, that she endorsed Swig, or that she was otherwise associated or affiliated with Swig.

37.     Hinton has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

38.     Cozzens is a model and actress who has appeared on an Old Spice national commercial, as well as a New Amsterdam Vodka national commercial. She has modeled for campaigns with Guess, Old Spice, Grey Goose, Sephora Cosmetics, Con Air Hair Tools, Sketcher Shoes, and many more. She has also modeled for Maxim magazine, Sandals Resort, Dodge, and Pepsi to name a few. Kim in total, has signed with 12 top agencies internationally, two of them being LA Models and LATALENT.

39.     Upon information and belief, Cozzens is depicted in the photo in Exhibit "D" to promote Swig on its Facebook page. This Image was intentionally altered to make it appear that Cozzens was either an employee working at Swig, that she endorsed Swig, or that she was otherwise associated or affiliated with Swig.

40.     Cozzens has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

41.     Gray is an extremely successful model that takes great pride in holding the prestigious title of a Playboy Playmate. Gray was the Playboy "Cyber Girl of the Month" for May 2006. She then went on to pose for three pictorials under Playboy's Fresh Faces. Moreover, she has not only been featured in such magazines as Super Street Bike, Import Tuner, Sport Truck, Iron Man, Muscle & Fitness, Guitar World, Ripped, Seventeen, Pump, and Maxim, but has also

posed for various catalogs. Gray has even appeared on television shows such as Tosh.O and The Daily Habit. She has booked jobs shooting for lingerie companies such as Shirley of Hollywood, Seven Til Midnight, Elegant Moments, and Jvalentine. She is also a real estate agent in Southern California and part owner of Sugar Taco, a plant-based restaurant located in Los Angeles. Gray currently has over 3.7 million Facebook followers, 1.2 million Instagram followers, and over 368,700 X (formerly known as Twitter) followers.

42.    Upon information and belief, Gray is depicted in the photo in Exhibit "E" to promote Swig on its Facebook page. This Image was intentionally altered to make it appear that Gray was either an employee working at Swig, that she endorsed Swig, or that she was otherwise associated or affiliated with Swig.

43.    Gray has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

44.    Kazdova was first discovered in a family vacation and was offered her first contract at the age of fourteen. When she turned fifteen, her agents from Czech Republic started sending her all over Asia and Europe to work as a model. She has worked in places such as Hong Kong, Tokyo, Beijing, Shanghai, Guangzhou. As well as throughout Europe, such as Milan, London, Paris, Portugal, Germany, Austria, and Dubai. She has appeared in Elle, Style, Cosmo Girl, Dolce Vita, Nylon, Prestige Paris, Fiasco, Composure, Formen, Modern Salon, Viva Glam and other magazines. Since 2011, she has been working in New York/ L.A. and has worked with Nordstrom, Macy's, Tadashi Shoji, Anthony Franco, Alicia Estrada, Mirabella Beauty, MAC, Level 99, Dreamgirl Lingerie, Erka Mare Swimwear, HausofPinkLemonaid Swimwear, HauteLook, Patagonia, and many others.

45.    Upon information and belief, Kazdova is depicted in the photo in Exhibit "F" to promote Swig on its Instagram page. This Image was intentionally altered to make it appear that Kazdova was either an employee working at Swig, that she endorsed Swig, or that she was

otherwise associated or affiliated with Swig.

46.     Kazdova has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

47.     Terrell is an American model and spokesmodel. Ms. Terrell is a contract model who travels and works with Monster Energy Supercross. Ms. Terrell also appears with The Superbike Races special events and also with Moto GP Championship races. Ms. Terrell is probably best known and has a huge social media following as the main Ring Girls for Bellator MMA fighting. Ms. Terrell has featured in a number of magazines and has appeared on the cover of Wheels and Heels magazine, Dub Magazine, Beer magazine, Girls Lowrider and many more. She also has her own podcast show known as The MAJic hour, and her talk show named "Mercedes and the Chap." She currently has 585,000 Instagram followers, 4.6 million followers on Facebook, and 126,100 followers on TikTok.

48.     Upon information and belief, Terrell is depicted in the photo in Exhibit "G" to promote Swig on its Instagram page. This Image was intentionally altered to make it appear that Terrell was either an employee working at Swig, that she endorsed Swig, or that she was otherwise associated or affiliated with Swig.

49.     Terrell has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

50.     Sugden is, and at all times relevant to this action was, is an English glamor model, actress, host, and spokeswoman who is one of Europe's most famous celebrities. Sugden has appeared in hundreds of magazines and is one of the most featured Page 3 girls of all time. Sugden was featured as a Page 3 girl as recently as December 2017. That made a tally for 2017 of five features. Sugden has been featured in a number of films and was a star competitor in Celebrity Big

Brother. Sugden has an official subscription-based website and has marketed her own products including a calendar for many years. https://onlyfans.com/rhianmarie Sugden has been involved in a number of charities and is often a spokeswoman for the prevention of animal cruelty. Sugden has over 978,000 Social Media Followers.

51.     Upon information and belief, Sugden is depicted in the photo in Exhibit "H" to promote Swig on its Instagram page. This Image was intentionally altered to make it appear that Sugden was either an employee working at Swig, that she endorsed Swig, or that she was otherwise associated or affiliated with Swig.

52.     Sugden has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

53.     Bartlett is a Ukrainian born Model and Actress living in Southern California, She is most famous for her print work for Guess Clothing, but is also known for her work on Fashion Nova, Dolls Kill and Ban Energy.  She has a very large social media following with over 3 Million Instagram followers.

54.     Upon information and belief, Bartlett is depicted in the photo in Exhibit "I" to promote Swig on its Instagram page. This Image was intentionally altered to make it appear that Bartlett was either an employee working at Swig, that she endorsed Swig, or that she was otherwise associated or affiliated with Swig.

55.     Bartlett has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

56.     Gibson is an American model who enjoys great success in her industry. Gibson was the *Import Tuner* magazine Model Search winner. Gibson is currently a model for the Falken Drift Team and can be seen at Formula Drift events. Gibson has also appeared in several magazines

including *FHM*, *American Curves*, *Supreme*, *MuscleMag International, Muscle & Fitness,* and *Teeze,* Gibson has also modeled for the world's largest PWC Engine Re manufacturer, Short Block Technologies, better known as SBT, Inc. in Clearwater, Florida. Gibson appeared in a home workout video called ENVY as a character named Eliana, which stands for the "E" in ENVY. Gibson continues to promote and market a number of different companies' sport and fitness equipment and is in the process of developing her own line of supplements and fitness clothing. Gibson has 71,600 Instagram followers.

57.     Upon information and belief, Gibson is depicted in the photo in Exhibit "J" to promote Swig on its X page. This Image was intentionally altered to make it appear that Gibson was either an employee working at Swig, that she endorsed Swig, or that she was otherwise associated or affiliated with Swig.

58.     Gibson has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendant's Business Activity and Misappropriation***

59.     Defendant operates (or operated, during the relevant time period,) a Night Club, where they are (or were) engaged in the business of selling alcohol and food in a sexually charged atmosphere.

60.     Defendant owns, operates, and controls Swig's social media accounts, including its Facebook, Twitter, and Instagram accounts.

61.     Defendant used Swig's Facebook, Twitter, and Instagram accounts to promote Swig's , and to attract patrons.

62.     Defendant did this for their own commercial and financial benefit.

63.     Defendant has used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Swig, endorsed Swig, or was otherwise associated or

11

affiliated with Swig.

64.     Defendant used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Swig to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

65.     Defendant was well aware that none of the Plaintiffs have ever been affiliated with or employed by Swig, and at no point have any of the Plaintiffs ever endorsed Swig or otherwise been affiliated or associated with Swig.

66.     All of Defendant's activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

67.     Defendant has never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

68.     Plaintiffs have never received any benefit from Defendant's unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

69.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

70.     The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

71.     Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

*Defendant's Misappropriation of Plaintiffs' Images*

72.     Defendant was aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Swig.

73.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

74.     In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Swig.

75.     At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

76.     No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

77.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Swig's website, Twitter, Facebook, or Instagram accounts.

78.     Defendant used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

## FIRST CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)**

79.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

80.     Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Plaintiffs from the conduct described herein

81.     Defendant used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendant's establishment , or endorsed Defendant's

businesses. This was done to promote and attract clientele to Defendant's establishment, and thereby generate revenue for Defendant.

82.     Thus, this was done in furtherance of Defendant's commercial benefit.

83.     Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. Defendant's customers are the exact demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identify to build their brand, they have acquired a distinctiveness through secondary meaning. Plaintiffs' image either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggest the characteristics of their product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

84.     Both Plaintiffs and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

85.     As such, an unauthorized use of Plaintiffs' image to promote an establishment created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Plaintiffs. There is no doubt that Defendant used Plaintiffs' image for advertising purposes, that is to promote their business enterprises, as such, Defendant's unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' image and likeness

86.     Defendant's use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that Defendant's establishment advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

87.     Despite the fact that Defendant was at all times aware that Plaintiffs neither worked at, nor endorsed its establishment, nevertheless, they used Plaintiffs' image in order to

mislead potential customers as to Plaintiffs' employment at and/or affiliation with Defendant 'sestablishment.

88.     Defendant knew that their use of Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendant's establishment.

89.     Upon information and belief, Defendant's use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

90.     As a direct and proximate result of Defendant's actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendant.

91.     Further, any failure, neglect or default by Defendant will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

92.     Due to Defendant's unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial.

93.     WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

**SECOND CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising)**

94.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

95.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, et seq. applies to Defendant and protects Plaintiffs from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

96.    Defendant used Plaintiffs' image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use their image in order to advertise, promote, and market Defendant's businesses, Defendant's establishment, and/or Defendant's establishment events and activities.

97.    Defendant's use of Plaintiffs' image, likeness and/or identity to advertise, promote and market Defendant's businesses, Defendant's establishment, and/or Defendant's events and activities as described in this Complaint was false and misleading.

98.    Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant events or activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

99.    Defendant's false advertising described above have the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant's establishment, as to

16

the general quality of attendees and participants of Defendant's establishment and in their events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant establishment events or activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant establishment events and activities.

100.    Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or was otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, or Defendant establishment events and activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant establishment events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant's establishment, visit Defendant's establishment, and participate in events at Defendant's establishment and had a material effect and impact on the decision of members and prospective members and participants to join Defendant's establishment, visit Defendant's establishment and take part in the events at Defendant's establishment.

101.    Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's establishment and their activities and attracting clientele to Defendant's establishment.

102.    Defendant knew or should have known that their unauthorized use of Plaintiff's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

103.    Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

104.    Defendant's wrongful conduct as described herein was willful.

105.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

106.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

107.    The method and manner in which Defendant used the image of Plaintiffs further evinces that Defendant was aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendant's use of their image to advertise Defendant's businesses.

108.    Defendant has caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the establishment lifestyle and activities at Defendant's establishment.

109.    Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (Right of Privacy)

110.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

111.    As set forth hereon, Defendant has violated each Plaintiff's common law right to privacy under Pennsylvania law.

112.    Defendant has done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

113.    Defendant invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their image and likeness on Defendant's website or related social media accounts as part of Defendant's advertising campaign.

114.    At all relevant times, Defendant's website and social media accounts were used and operated by Defendant for advertising and trade purposes.

115.    At no point did any Defendant ever receive permission or consent, be it written or otherwise, to use any Plaintiffs' image and likeness on their website or social media account.

116.    Defendant's website and social media accounts were designed to attract business to the Defendant and generate revenue for Defendant.

117.    Plaintiffs are informed and believes and hereon allege that the manner in which Defendant posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendant published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

118.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant's republished Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

119.    Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

120.    Upon information and belief, Defendant use of Plaintiffs' image and likeness did in fact attract clientele and generate business for Defendant.

121.    At no point did any Defendant ever receive permission or consent to use any Plaintiffs' Image on their website or social media account.

122.    Defendant was at all relevant times aware that they never received any Plaintiffs' permission or consent to use their image and likeness on any website or social media account, or on any other medium, in order to promote the Defendant.

123.    At no point did Defendant ever compensate Plaintiffs for its use of their image and likeness.

124.    No applicable privilege or authorization exists for Defendant's use of Plaintiffs' image and likeness.

### FOURTH CAUSE OF ACTION
**(Common Law Right of Publicity)**

125.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

126.    As set forth hereon, each Plaintiff has and had at the time of Defendant's misappropriation a commercial interest in her image, photo, persona and likeness.

127.    Said commercial interest was developed by each Plaintiff through her investment of time, effort and money in her career, image, persona and likeness.

128.    As set forth herein, Defendant used each Plaintiff's image and likeness for commercial purposes by using same in Defendant advertising.

129.    Defendant did so without any Plaintiff's consent, written or otherwise.

130.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

131.    Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

132.    Defendant was at all relevant times aware that they never received any Plaintiffs' permission or consent to use their image and likeness on any website or social media account, or on any other medium, in order to promote the Defendant.

133.    At no point did Defendant ever compensate Plaintiffs for its use of their image and likeness.

134.    No applicable privilege or authorization exists for Defendant's use of Plaintiffs' image and likeness.

### FIFTH CAUSE OF ACTION
**(Defamation)**

135.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

136.    As detailed throughout this Complaint, Defendants have published altered image and likeness of Plaintiffs in order to promote their Defendants to the general public and potential clientele.

137.    Defendant's publication of said image and likeness constitutes a representation that Plaintiffs were either employed by the Defendant, that they endorsed the Defendant, or that they had some affiliation with the Defendant.

138.    None of these representations were true.

139.    In publishing Plaintiffs' altered image and likeness, it was Defendant's intention to create a false impression to the general public that Plaintiffs were entertainers working at the Defendant, or endorsed the Defendant.

140.    Defendant was at least negligent in publishing Plaintiffs' image and likeness because they knew, or should have known, that Plaintiffs were not employed by the Defendant, had no affiliation with the Defendant, had not consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

141.    In the alternative, Defendant published the image and likeness of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by the Defendant, had no affiliation with the Defendant, had not consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

142.    Despite Defendant's knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' image and likeness to attract clientele and generate revenue

for themselves.

143.    Defendant's publication of Plaintiffs' image and likeness constitutes defamation under Pennsylvania law because said publication falsely accuses Plaintiffs of having acted in a manner – i.e., working as an employee of and/or endorsing Defendant's ESTABLISHMENTs - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

144.    Defendant's publication of Plaintiffs' image and likeness likewise constitutes defamation per se under Pennsylvania law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

145.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was an employee of and/or promoting as Defendant, an inference which Defendant's publication of the image and likeness support.

146.    Defendant's publication of Plaintiffs' image and likeness likewise constitutes defamation per se under Pennsylvania law because, insofar as said publication falsely portrays each of the Plaintiffs as an entertainer, it imputes unchastity to her.

147.    Defendant's publication of Plaintiffs' Image caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SIXTH CAUSE OF ACTION
### (Negligence and Respondeat Superior)

148.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

149.    Plaintiffs are further informed and believe and hereon allege that Defendant maintains or should have maintained employee policies and procedures which govern the use of

intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and non-consensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

150.    Further, Defendant should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

151.    Defendant owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

152.    Defendant further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

153.    Defendant breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

154.    Defendant further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Pennsylvania law, were not violated. Defendant breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

155.    Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their image and likeness were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

156.    As a result of Defendant's negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Conversion)

157.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

158.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their image and likeness, and have property interests thereon.

159.    By the conduct detailed above, Defendant converted Plaintiffs' property rights in their image and likeness for their own use and financial gain image and likeness for its own use and financial gain.

160.    As a result of Defendant's unlawful conversion of Plaintiffs' image and likeness, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Unjust Enrichment)

161.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

162.    As set forth in detail above, Defendant published Plaintiffs' image and likeness in order to promote the Defendant to the general public and potential clientele.

163.    Defendant's publication was for the purpose of creating a false impression to the general public that Plaintiffs were either employees working at the Defendant, or endorsed the Defendant.

164.    Defendant's purpose in publishing Plaintiffs' image and likeness was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

165.    Upon information and belief, Defendant did in fact benefit commercially due to their unauthorized use of Plaintiffs' image and likeness.

166.    Defendant has been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendant in attracting clientele to their

Defendant.

167.    Plaintiffs have not been compensated for Defendant's commercial exploitation of their image and likeness, and thus any financial benefit which Defendant received due to said exploitation is unjust.

168.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Quantum Meruit)

169.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

170.    Plaintiffs are each internationally known models who earn their livings appearing in, inter alia, commercials, advertisements, and publications on behalf of companies and brands.

171.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

172.    Although Defendant has availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their establishment, endorse their establishment, or are otherwise affiliated with their establishment, Defendant has not compensated Plaintiffs.

173.    Plaintiffs are therefore entitled to reasonable compensation for the Defendant's unauthorized use of their image and likeness.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs respectfully request Judgment in their favor and against Defendant as follows:

(a)    For actual damages, in an amount to be determined at trial, relating to Plaintiffs' Causes of Action;

(b)    For an order permanently enjoining Defendant from using Plaintiffs' Images to

promote Swig's Night Club;

(c)      For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117;

(d)      For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117;

(e)      For such other and further relief as the Court may deem just and proper.


<table>
<tr><td></td><td><em>/s/ Gerald B. Baldino, III</em></td></tr>
</table>

OF COUNSEL:

John V. Golaszewski, Esquire*

THE CASAS LAW FIRM, PC

1325 Avenue of the Americas, 28th Floor

New York, NY 10019

T: 646-872-3178

F: 855-220-9626

john@talentrights.law

Gerald B. Baldino, III, Esquire

Attorney I.D. No. 326111

SACCHETTA & BALDINO

308 E. Second Street

Media, PA 19063

P: (610) 891-9212

F: (610) 891-7190

gbaldino@sbattorney.com

*Attorney for Plaintiffs*

Dated: November 7, 2025

*Pro Hac Vice Application Forthcoming*